[Cite as *State ex rel. Melott v. Indus. Comm.*, 2016-Ohio-8268.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Earl Melott, | : | |
| Relator, | : | |
| v. | : | No. 15AP-1065 |
| Industrial Commission of Ohio and Williams Industrial Services, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on December 20, 2016

**On brief:** *Agee, Clymer, Mitchell & Portman,* and *Gregory R. Mitchell,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

BROWN, J.

{¶ 1} Relator, Earl Melott, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its June 23, 2015 order wherein its staff hearing officer denied relator's application for permanent total disability compensation based solely on a finding that relator voluntarily abandoned the workforce in 1998, and to enter an order that adjudicates the merits of the application absent the finding of a voluntary workforce abandonment.

{¶ 2}   This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. No objections to that decision have been filed.

{¶ 3}   Accordingly, after an examination of the magistrate's decision, an independent review of the record, pursuant to Civ.R. 53, we adopt the magistrate's findings of fact and conclusions of law. Relator's request for a writ of mandamus is denied.

*Writ of mandamus denied.*

SADLER and BRUNNER, JJ, concur.

_____

[Cite as *State ex rel. Melott v. Indus. Comm.*, 2016-Ohio-8268.]

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Earl Melott, | : | |
| Relator, | : | |
| v. | : | No. 15AP-1065 |
| Industrial Commission of Ohio and Williams Industrial Services, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on August 10, 2016

*Agee, Clymer, Mitchell & Portman,* and *Gregory R. Mitchell,* for relator.

*Michael DeWine,* Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 4} In this original action, relator, Earl Melott, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate the June 23, 2015 order of its staff hearing officer ("SHO") that denies relator's application for permanent total disability ("PTD") compensation based solely upon a finding that relator voluntarily abandoned the workforce in 1998, and to enter an order that adjudicates the merits of the application absent the finding of a voluntary workforce abandonment.

Findings of Fact:

{¶ 5}   1. On November 3, 1993, relator injured his lower back while employed as a painter for Williams Industrial Services, Inc., a state-fund employer.  The injury occurred when relator was carrying a ladder and he tripped over an air hose.  The industrial claim (No. 93-318887) was initially allowed for "sprain lumbar region; disc bulging and focal spurring at L5-S1

{¶ 6}   2. On January 6, 2011, relator underwent low back surgery performed by Won G. Song, M.D.  In his operative report, Dr. Song describes the surgical procedure as a "[l]umbar laminectomy of L5-S1 on right with excision of disk with foraminotomy."

{¶ 7}   3. On January 25, 2011, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order awarding temporary total disability ("TTD") compensation beginning January 6, 2011 based upon a C-84 completed by Dr. Song.  Apparently, the bureau's order was not administratively appealed.

{¶ 8}   4. On December 6, 2012, at the bureau's request, relator was examined by James Sardo, M.D.  In his six-page narrative report, Dr. Sardo opined that the allowed physical conditions of the industrial claim have reached maximum medical improvement ("MMI").

{¶ 9}   5. On January 10, 2013, citing Dr. Sardo's report, the bureau moved for termination of TTD compensation on grounds that the industrial injury had reached MMI.

{¶ 10} 6. Following a February 8, 2013 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation effective the date of the hearing.  The DHO's order states reliance upon Dr. Sardo's report.

{¶ 11} 7. Relator administratively appealed the DHO's order of February 8, 2013.

{¶ 12} 8. Following a March 19, 2013 hearing, an SHO issued an order affirming the DHO's order of February 8, 2013.

{¶ 13} 9. On April 17, 2014, relator moved for an additional claim allowance and for the payment of TTD compensation based upon the additional claim allowance.

{¶ 14} 10. On July 1, 2014, the bureau mailed an order additionally allowing the claim for "major depressive disorder single episode, severe, without psychotic features." The bureau also awarded TTD compensation beginning March 13, 2014.

{¶ 15} 11. Apparently, the July 1, 2014 bureau order was not administratively appealed.

{¶ 16} 12. Earlier, on May 22, 2013, relator filed an application for PTD compensation.

{¶ 17} 13. Following a September 4, 2013 hearing, an SHO issued an order denying the application.  The SHO's order of September 4, 2013 concludes:

> Based upon physical examination findings, Dr. Masone's opinion that the Injured Worker can perform sedentary work, the Injured Worker's young age, and the Injured Worker's lack of effort to seek vocational retraining, the Hearing Officer does not find the Injured Worker is rendered permanently and totally disabled.

{¶ 18} 14. On January 15, 2015, at relator's request, he was examined by psychologist Raymond D. Richetta, Ph.D.  In his five-page narrative report, Dr. Richetta concludes:

> Mr. Melott does not manage restful sleep due to pain and anxiety and, even with his medications, he sometimes does not sleep for days at a time. He is sleep-deprived and, due to that factor alone, his energy is reduced, his concentration is reduced, and his decision-making is reduced. His depression continues, and his depression further reduced his energy, concentration, and decision-making. He is socially avoidant outside of his household. He would be unable to cope with co-workers, supervisors, or the general public at a job. His concentration prevents his remembering and carrying out more then very simple job instructions. His insomnia would prevent him from arriving promptly at a job or from maintaining regular attendance. His energy is too low for any type of employment. Therefore, the evaluation finds Earl Melott permanently and totally disabled from engaging in any form of sustained remunerative employment due to the allowed psychological condition alone.

{¶ 19} 15. On January 6, 2015, Dr. Song completed a one-page "Medical Questionnaire" on which he opined that relator is permanently and totally disabled based upon the allowed physical conditions of the claim.

{¶ 20} 16. Earlier, on October 22, 2014, at the bureau's request, relator was examined by clinical psychologist Nicole Leisgang, Psy.D.  In her seven-page narrative

report, Dr. Leisgang opined: "[t]he injured worker's emotional difficulties preclude him from employment."

{¶ 21} 17. On February 6, 2015, relator filed his second PTD application. In support, relator submitted the January 15, 2015 report of Dr. Richetta, the January 6, 2015 report of Dr. Song, and the October 22, 2014 report of Dr. Leisgang.

{¶ 22} 18. Following a June 23, 2015 hearing, an SHO issued an order denying relator's PTD application filed February 6, 2015. The SHO's order explains:

> The Injured Worker was born on 03/17/1968 and is currently 47 years old. He has a 10th grade education. The Injured Worker's two IC-2 Applications and the 09/04/2013 Staff Hearing order provide his prior work history. The Injured Worker was only approximately 30 years old when he last worked in 1998.
>
> The Injured Worker testified that he last worked in 1998, although there is no medical evidence found on file from 1998 removing him from his former job or providing any physical restrictions. There is little evidence of medical treatment on file for 1998 or from 1998 to approximately 05/12/2003 and no medical evidence of any disability or physical restrictions until approximately 05/12/2003 (C-84 Request for Temporary Total Compensation). There is then no evidence of any C-84 or MEDCO-14 Physician's Report of Work Ability requests for temporary total disability from approximately August of 2003 to 2011. The Injured Worker testified that he has made no attempts to find work since he last worked in 1998. There is no evidence on file of any attempts at vocational rehabilitation or any attempts to obtain his GED since he last worked in 1998. Based on the lack of medical evidence of any physical restrictions due to the allowed claim at the time the Injured Worker stopped working in 1998 and the lack of any documentary evidence of any attempts to return to any type of work since he stopped working in 1998, along with the lack of any attempts at vocational rehabilitation since he last worked, it is found the Injured Worker voluntarily abandoned the workforce for non-claim related reasons in 1998. Since is it is found the Injured Worker voluntarily abandoned the work force it is found he is not eligible to receive permanent total disability compensation pursuant to *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202 and *State ex rel. Black v. Indus. Comm.,* Slip Opinion No.

2013-Ohio-4550, therefore, the application for permanent total disability, is denied.

{¶ 23} 19. On August 4, 2015, the three-member commission mailed an order denying relator's motion for reconsideration of the SHO's order of June 23, 2015.

{¶ 24} 20. On November 20, 2015, relator, Earl Melott, filed this mandamus action.

Conclusions of Law:

{¶ 25} As earlier noted, on January 25, 2011, the bureau mailed an order awarding TTD compensation beginning January 6, 2011 based upon a C-84 from Dr. Song. The bureau's TTD award was not administratively appealed. Later, the commission terminated TTD payments upon finding that the industrial injury had reached MMI.

{¶ 26} On July 1, 2014, the bureau mailed an order additionally allowing the claim for a psychological disorder and awarding TTD compensation beginning March 13, 2014. This bureau order was not administratively appealed.

{¶ 27} In both instances, TTD compensation was awarded based upon the medical evidence submitted. Whether relator had voluntarily abandoned the workforce was not an issue raised or determined in either instance.

{¶ 28} Because workforce abandonment was allegedly available to the bureau as a defense to the requests for TTD compensation and it failed to raise the issue at those times, relator argues that the doctrine of collateral estoppel bars the commission from adjudicating the issue with respect to relator's second PTD application. The magistrate disagrees.

{¶ 29} In *State ex rel. Davis v. Pub. Emps. Retirement Bd.,* 120 Ohio St.3d 386, 2008-Ohio-6254, the Supreme Court of Ohio had occasion to set forth relevant law:

> In Ohio, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.,* 113 Ohio St.3d 59, 2007 Ohio 1102, 862 N.E.2d 803, P 6. "[I]ssue preclusion, [or] collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions

be identical or different." *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 1998 Ohio 435, 692 N.E.2d 140. "While the merger and bar aspects of res judicata have the effect of precluding the relitigation of the same cause of action, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *Id.* Collateral estoppel "applies equally to administrative proceedings." *State ex rel. v. Allen Refractories Co.,* 114 Ohio St.3d 129, 2007 Ohio 3758, 870 N.E.2d 701, P 8.

"Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183, 1994 Ohio 358, 637 N.E.2d 917; see also *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 201, 2 OBR 732, 443 N.E.2d 978 ("an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action").

*Id.* at 27-28.

{¶ 30} Pertinent here is paragraph two of the syllabus of *State ex rel. Baker Material Handling Corp. v. Indus. Comm.*, 69 Ohio St.3d 202 (1994):

An employee who retires prior to becoming permanently and totally disabled is precluded from eligibility for permanent total disability compensation only if the retirement is voluntary and constitutes an abandonment of the entire job market.

{¶ 31} Ohio Adm.Code 4121-3-34 sets forth the commission's rules regarding the adjudication of PTD applications. Ohio Adm.Code 4121-3-34(D) sets forth the commission's guidelines for the adjudication of PTD applications. Paragraph two of the *Baker* syllabus is incorporated into the guidelines at Ohio Adm.Code 4121-3-34(D)(1)(d):

If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be

permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.

{¶ 32} Also pertinent here is *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, a seminal case that judicially expands the scenario for denial of TTD compensation. The *Pierron* court states:

Temporary total disability compensation is intended to compensate an injured worker for the loss of earnings incurred while the industrial injury heals. *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533. There can be no lost earnings, however, or even a potential for lost earnings, if the claimant is no longer part of the active work force. As *Ashcraft* observed, a claimant who leaves the labor market "no longer incurs a loss of earnings because he is no longer in a position to return to work." When the reason for this absence from the work force is unrelated to the industrial injury, temporary total disability compensation is foreclosed. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678. As we stated in *State ex rel. Baker v. Indus. Comm.* (2000), 89 Ohio St.3d 376, 380-381, 2000 Ohio 168, 732 N.E.2d 355, when a claimant "chooses for reasons unrelated to his industrial injury not to return to any work when able to do so, that employee has abandoned both his employment and his eligibility for [temporary total disability]."

*Id.* at ¶ 9.

{¶ 33} Following *Pierron,* it became clear that voluntary workforce abandonment precludes both TTD and PTD compensation.

{¶ 34} Here, in effect, relator seizes upon the *Pierron* doctrine to assert that the bureau's failure to raise voluntary workforce abandonment in the two instances where the bureau awarded TTD compensation is cause for the application of collateral estoppel. Relator is incorrect.

{¶ 35} The law regarding collateral estoppel as set forth in *Davis* indicates that relator's argument misses the mark.

{¶ 36} It is clear with respect to both instances of a bureau TTD award, workforce abandonment was not actually and necessarily litigated and determined by the bureau nor was a finding that relator had not voluntarily abandoned the workforce "essential to the judgment" of the bureau.

{¶ 37} In fact, the bureau's orders mailed January 25, 2011 and July 1, 2014, are not adjudications because the bureau has no authority to adjudicate TTD compensation. The bureau issued its orders awarding TTD compensation rather than referring the matters to the commission for adjudication because TTD compensation was not disputed by the employer or the bureau in this state-fund case. *See State ex rel. Crabtree v. Ohio Bur. of Workers' Comp.*, 71 Ohio St.3d 504 (1994). Given that analysis, it is clear that collateral estoppel cannot apply.

{¶ 38} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
KENNETH W. MACKE


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).