[Cite as *State ex rel. Schumacher v. Auto Sys. Ctrs. Inc.*, 2017-Ohio-5523.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Paul H. Schumacher, | : | |
| Relator, | : | |
| v. | : | No. 16AP-535 |
| Auto Systems Centers Inc. and The Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on June 27, 2017

**On brief:** *Clements, Taylor, Butkovich, & Cohen LPA, Co.,* and *Edward Cohen,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Paul H. Schumacher, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied his application for temporary total disability ("TTD") compensation, and to enter an order granting relator said compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that Dr. Brue's report, coupled with relator's testimony, is some evidence that relator accepted

work within his restrictions but was subsequently terminated for reasons unrelated to the allowed conditions in his claim. Therefore, the commission did not abuse its discretion when it denied relator's request for TTD compensation. Accordingly, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed an objection to the magistrate's decision. Relator argues that the evidence is insufficient to support the commission's decision. We disagree.

{¶ 4} Dr. Brue's report indicates that relator's level of disability did not preclude him from work within his capabilities. This conclusion is also supported by relator's testimony that he worked at a pizza shop, a job he lost because he missed his shift. Relator presented no evidence that he lost his pizza job for reasons related to his allowed conditions. The commission's order states the evidence it relied on and provides a brief explanation for why relator is not entitled to TTD compensation. Because some evidence supports the commission's order, the commission did not abuse its discretion when it denied relator TTD compensation. For these reasons, we overrule relator's objection.

{¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objection overruled; writ of mandamus denied.*

DORRIAN and BRUNNER, JJ., concur.

—————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Paul H. Schumacher, | : | |
| Relator, | : | |
| v. | : | No. 16AP-535 |
| Auto Systems Centers Inc.<br>and<br>The Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

MAGISTRATE'S DECISION

Rendered on January 25, 2017

*Clements, Taylor, Butkovich, & Cohen LPA, Co.,* and *Edward Cohen,* for relator.

*Michael DeWine,* Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 6} Relator, Paul Schumacher, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for temporary total disability ("TTD") compensation, and ordering the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 7} 1. Relator sustained a work-related injury on July 25, 2011 when he fell approximately 15 feet. Relator's workers' compensation claim was originally allowed for the following conditions:

> Fracture sacrum/coccyx-closed, right; subluxation sacroiliac joint, left; contusion of elbow, right, contusion of chest wall; contusion of knee, right; contusion of abdominal wall; abrasion right forearm; abrasion right elbow; contusion genital organs; symphysis pubis separation; fracture anterior pubis, right; bladder collapse.

{¶ 8} 2. Following his injury, relator's employer paid him salary continuation in lieu of TTD compensation.

{¶ 9} 3. In December 2011, relator signed an agreement for vocational rehabilitation services and began receiving living maintenance benefits in March 2012.

{¶ 10} 4. At some point in 2012, relator stopped rehabilitation services to help care for his wife who was ill.

{¶ 11} 5. By order mailed November 28, 2014, relator's workers' compensation claim was additionally allowed for the following conditions:

> Lumbar disc protrusion                 L4-L5
> Sub agg pre-ex lumbar facet arthropathy    L4-L5
> Sub agg pre-ex lumbar facet arthropathy    L5-S1

{¶ 12} 6. In December 2014, relator took a job at Jet's Pizza. That job ended in February 2015 when he was terminated for missing a shift.

{¶ 13} 7. In July 2015, relator requested TTD compensation based on the newly allowed conditions as follows:

> The injured worker requests [to] be paid temporary total disability compensation from February 13, 2014 through the present and to continue upon submission of medical proof, based upon the newly allowed lumbar conditions in this claim; note that the claimant is not requesting TTD for the closed period of December 31, 2014 through February 20, 2015, during which time he was engaged in a failed return to work attempt.

{¶ 14} 8. The start date coincides with relator's first examination by Mitchell E. Simmons, M.D.

{¶ 15} 9. James D. Brue, M.D., provided a physician's review dated August 2, 2015. Dr. Brue identified the allowed conditions in relator's claim, identified and discussed the medical records which he reviewed, and opined that the evidence did not support the payment of TTD compensation for the following reasons:

> This is a gentleman who fell through the ceiling and suffered injuries as allowed. By late 2012 the pelvic fractures had resolved and he had work restrictions. For personal reasons he did not return to work. He [had] been treated for low back pain and had responded to sacroiliac joint injections but still had complaints of pain ranging 2-6/10 with tenderness palpation of lumbar region. Injured worker did not seek treatment for 14 months again for personal reasons. Record indicated that he states [t]his was to stay home and take care of his wife until she was placed in a nursing home. It should be noted therefore he was physically able of taking care of [a] significantly impaired spouse. He was currently living in a house by himself so he was able to manage his activities of daily living and was able to transport himself in his own vehicle. Objective findings on 02/13/14 were not substantially different than those [that] had been previously documented in October 2012. Treatment after 02/13/14 documented no significant change in his medical conditions. On 12/31/14 record indicates that he was able to work in a pizza shop and worked there to 02/20/15. There is no indication as to why his employment stopped. The record clearly indicates that this was a time in which he was doing "great", "wonderful" and "fantastic" only 8 days before he stopped working. Therefore, clearly his work injury and the allowed conditions was not the reason why he was no longer employed. He was also able to be employed prior to receiving any treatment for the disc protrusions and facet arthropathy. This does not support that he was totally disabled beginning on 02/13/14 as the clinical examination before his employment in the pizza shop was unchanged and was better when he ceased working. Subsequently his examinations were essentially unchanged and there is no support for period temporary total disability. Simply allowing additional conditions does not automatically mean that somebody has a change in functional capacities. Record indicates his physical abilities had not changed on or before 02/13/14. Therefore, there is insufficient evidence to support a new period of temporary total disability that begins on that date. Clearly the injured worker was able to work with restrictions as documented by his temporary employment. Cessation of

employment was clearly not due to the allowed conditions or his physical capacities.

{¶ 16} 10. Relator's application for TTD compensation was heard before a district hearing officer ("DHO") on August 26, 2015. The DHO relied on the report of Dr. Brue and denied relator's request, stating:

The Injured Worker's C-86 Motion, filed 07/16/2015, is denied.

The Injured Worker's motion requesting temporary total disability compensation for the periods of 02/13/2014 through 12/30/2014 and 02/21/2015 through 08/26/2015 is denied.

The District Hearing Officer finds that the Injured Worker has failed to meet his burden of proof in establishing that the allowed conditions rendered him temporarily and totally disabled for the requested periods based upon the report of James Brue, M.D., dated 08/02/2015.

By way of history, the Injured Worker did not treat in this claim between 10/23/2012 and 02/13/2014. Further, the Injured Worker worked delivering pizzas from 12/31/2014 through 02/20/2015, at which time he was discharged for reasons unrelated to the allowed conditions in this claim. Specifically, the Injured Worker testified at hearing that he was terminated from his pizza delivery job because he missed a shift at work.

All evidence on file was reviewed.

{¶ 17} 11. Relator's appeal was heard before a staff hearing officer ("SHO") on October 7, 2015. The SHO affirmed the prior DHO order and denied the requested period of TTD compensation, stating:

The Staff Hearing Officer notes that the Injured Worker's Motion requests temporary total disability compensation for the periods of 02/13/2014 through 12/30/2014 and 02/21/2015 through 08/26/2015.

Staff Hearing Officer notes, by way of history, that the Injured Worker did not treat in this claim between 10/23/2012 and 02/13/2014. Staff Hearing Officer finds that the Injured Worker worked delivering pizzas from 12/31/2014 through 02/20/2015. Staff Hearing Officer finds

at that time the Injured Worker was discharged for reasons unrelated to the allowed conditions in the claim. Staff Hearing Officer finds that the Injured Worker testified at the hearing that he was terminated from his pizza delivering job because he missed a shift at work.

The Staff Hearing Officer finds the Injured Worker did not establish by a preponderance of the evidence that the allowed conditions in the claim rendered him temporarily and totally disabled for the requested periods of 02/13/2014 through 12/30/2014 and 02/21/2015 through 08/26/2015.

Therefore temporary total disability compensation is denied for the periods of 02/13/2014 through 12/30/2014 and 02/21/2015 through 08/26/2015.

This order is based on the report of James Brue, M.D., dated 08/02/2015.

{¶ 18} 12. Relator's appeal was refused by order of the commission mailed October 30, 2015.

{¶ 19} 13. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 20} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 21} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be

given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 22} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement ("MMI"). *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 23} It is undisputed that TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost when an injured worker's injury presents a return to the former position of employment. There can be no lost wages nor the potential for lost wages, if the injured worker is no longer a part of the active workforce. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245.

{¶ 24} In making his argument, relator focuses on the following facts which, in his opinion, establish his entitlement to an award of TTD compensation: (1) none of his allowed conditions were ever found to have reached MMI; (2) his job with Jet's Pizza began after the initial period for which he seeks TTD compensation, does not include the time he worked at Jet's Pizza, and includes the time after he left Jet's Pizza; and (3) the newly allowed conditions represent a change in circumstances warranting the payment of compensation.

{¶ 25} In arguing that it did not abuse its discretion by denying the requested period of compensation, the commission relies on the following: (1) in his review of relator's medical evidence, Dr. Brue noted that the medical evidence from February 2014, when relator first treated with Dr. Simmons, is not substantially different from the medical evidence in the record from October 2012 and no significant change was noted after February 2014; (2) relator did not treat for the newly allowed conditions before he took the job with Jet's Pizza; and (3) relator testified that he was terminated from Jet's

Pizza when he missed a shift and not because the allowed conditions rendered him incapable of continuing his employment.

{¶ 26} Relator is correct to assert that none of his conditions were ever found to have reached MMI. Following his injury, relator was unable to return to his former position of employment and his employer paid him wage continuation in lieu of TTD compensation. In December 2014, relator took a light-duty job with Jet's Pizza. Relator worked at Jet's Pizza until February 20, 2015 when he missed a shift at work and was terminated.

{¶ 27} Part of relator's argument appears to stem from a memorandum from his attorney prepared after the SHO denied the requested period of TTD compensation. In that memorandum, counsel indicated that relator "testified that the reason he lost a light duty job was that he fell asleep due to the side effects of the prescription medications he was receiving in the claim and accordingly was terminated due to this new employer's zero tolerance policy." As such, relator asserts now that his termination was caused by the allowed conditions in his claim.

{¶ 28} First, there is no transcript from the hearing before the SHO so, aside from the statement in the SHO order indicating that relator "testified at the hearing that he was terminated from his pizza delivering job because he missed a shift at work," there is no way to know the substance of relator's testimony. Second, this memorandum was presented to the commission as part of relator's appeal from the SHO order. As such, to the extent that relator maintains that this is some evidence to support his argument that he ceased his pizza job due to his allowed injuries, this piece of evidence was not before the SHO when relator's TTD compensation was denied.

{¶ 29} To the extent that relator argues that he presented medical evidence showing a change in his circumstances resulting in the allowance of new conditions and argues that, at a minimum, he should be entitled to an award of TTD compensation for the period preceding his job with Jet's Pizza, the report of Dr. Brue constitutes some evidence to the contrary. Specifically, after reviewing the medical evidence, Dr. Brue noted that:

> [O]bjective findings on 02/13/14 were not substantially different than those had been previously documented in October 2012. Treatment after 02/13/14 documented no

significant change in his medical conditions. On 12/31/14 record indicates that he was able to work in a pizza shop and worked there to 02/20/15. There is no indication as to why his employment stopped. The record clearly indicates that this was a time in which he was doing "great", "wonderful" and "fantastic" only 8 days before he stopped working. Therefore, clearly his work injury and the allowed conditions was not the reason why he was no longer employed.

{¶ 30} Relator cites to this court's decision in *State ex rel. German v. Provider Servs. Holdings, LLC,* 10th Dist. No. 13AP-149, 2014-Ohio-3336, and asserts that an injured worker's voluntary abandonment of a subsequent light-duty job is only relevant after the commission has correctly determined that the injured worker voluntarily abandoned their employment with the employer of record. In making this argument, relator again emphasizes that he was never released to return to his former position of employment.

{¶ 31} The magistrate finds that relator is misinterpreting this court's decision. Dana German sustained a work-related injury while employed as a dietary cook/aide at a nursing home owned and operated by Provider

Services Holdings, LLC ("PSH"). Following her injury, German returned to work in a light-duty capacity. German left PSH because she was getting married and moving.

{¶ 32} Later, German found employment with General Aluminum ("General"). Although German testified that she left the job with General due to her injury, there was evidence in the record that she was terminated.

{¶ 33} Ultimately, German's request for TTD compensation was denied and she filed a mandamus action in this court. German argued that the commission abused its discretion in determining that she voluntarily abandoned her employment with PSH and also with General. In discussing her departure from PSH, the magistrate noted:

> To begin, it can be noted that relator's presumed inability to perform all of the duties of her former position of employment at the time she resigned her employment with PSH did not bar a commission finding that she voluntarily abandoned her employment with PSH. That is to say, a commission finding of a voluntary abandonment was not precluded by the fact that relator was working in a light-duty capacity at the time of her resignation and was thus presumed to be unable to perform all the duties of her

> former position of employment. *State ex rel. Adkins v. Indus. Comm.*, 10th Dist. No. 07AP-975, 2008-Ohio-4260; *State ex rel. Apostolic Christian Home, Inc. v. King*, 10th Dist. No. 08AP-1078, 2009-Ohio-5670.
>
> In finding that relator's departure from her employment at PSH was not injury induced and therefore voluntary, the SHO relied in part upon a finding that "[t]here is no contemporaneous evidence from a physician that she left the job due to physical difficulties stemming from the allowed conditions." Citing this court's decision in *State ex rel. Mid-Ohio Wood Prods., Inc. v. Indus. Comm.*, 10th Dist. No. 07AP-478, 2008-Ohio-2453, relator contends that the commission abused its discretion by relying upon the lack of contemporaneous medical evidence to support the finding that the departure from employment at PSH was not injury induced. As relator puts it, the commission "can rely solely upon the injured worker's testimony of his physical condition." (Relator's brief, 18.) Put another way, relator posits "[t]here is no requirement of objective medical evidence corroborating an injured worker's testimony regarding why he left his employment." (Relator's brief, 18.) Put yet another way, relator argues that the commission abused its discretion by requiring that she "produce evidence that she was advised by her doctor to leave her employment." (Relator's brief, 19.)
>
> Relator's reliance upon Mid-Ohio is misplaced and her arguments lack merit.

*Id.* at 29-30.

{¶ 34} As above indicated, German was unable to return to her former position of employment and was performing light-duty work. Similarly, although not for the same employer, relator herein was performing light-duty work. Neither German nor relator were able to return to their former positions of employment. To the extent that relator argues there is a distinction in performing light-duty work for the employer of record and performing light-duty work for another employer, there is no such distinction. TTD compensation is designed to compensate an injured worker for loss of wages caused by work-related injuries. Here, there was some evidence that relator's departure from Jet's Pizza was not related to the allowed conditions in his claim. That is some evidence upon which the commission could rely to deny relator's request for a writ of mandamus.

{¶ 35} Furthermore, to the extent that Dr. Brue's report indicates that relator's symptoms remained relatively stable between 2012 and 2014, relator's argument that there is no evidence in the record to support the commission's determination that he is not entitled to TTD compensation for the period preceding his job at Jet's Pizza fails. Relator ceased rehabilitation services to care for his wife. There is no evidence from that time to indicate he could not perform the light-duty job he began with Jet's Pizza in 2014. The medical evidence shows a relatively stable condition.

{¶ 36} Lastly, relator argues that the commission must first find that he was capable of returning to his former position of employment before termination from a light-duty job can disqualify him from receiving TTD compensation. This is not accurate. Many claimants cannot return from their former position of employment. If they take work within their restrictions and later are incapable of working due to the allowed conditions, they are eligible to receive TTD compensation. Likewise, if they take work within their restrictions and are terminated for reasons unrelated to the allowed conditions, they are not eligible to receive TTD compensation.

{¶ 37} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied his request for TTD compensation, and this court should deny his request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).